Argued March 22, affirmed April 19, 1921.

# SALING *v*. FIRST NAT. BANK.

(197 Pac. 257.)

**Attachment—Evidence Insufficient to Show Claimant Made State-**
**ment to Creditor Bank to Encourage Making of Loan.**

1. In suit to quiet title to relieve realty from the lien of an
attachment issued in defendant bank's suit on a note for money
loaned to plaintiff's son by defendant under belief that the son
owned the land attached and then claimed by plaintiff, evidence
*held* insufficient to show that plaintiff made any statement to the
bank to encourage the making of the loan from which the note
resulted, or was responsible in any way therefor to make good the
charge of fraud against plaintiff or of collusion between him and
the borrower from the bank.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

This is a suit to quiet title. A decree was passed
in favor of plaintiff. Defendant appealed.

On July 31, 1918, the defendant herein, as plaintiff,
commenced an action in the Circuit Court of the
State of Oregon for Tillamook County, upon a prom-
issory note for $1,000 due from one C. A. Saling,
and on the same day a writ of attachment was
issued in the action and the property involved
was attached. This suit is brought to relieve the
property from the lien of the attachment. This
cause was before this court upon a former appeal:
93 Or. 237 (182 Pac. 140). The law of the case
was practically settled in the opinion by Mr. Justice
BENNETT. The allegations of the second affirmative
defense, which is the only one now involved, are set
out at length in the former opinion. The suit was
remanded for the purpose of a hearing upon the
question of fraud. The allegations in regard thereto
are in substance as follows:

Plaintiff and C. A. Saling were father and son. About March 8, 1918, C. A. Saling came to the bank of the defendant and asked for the loan of $1,000. He represented to defendant that he had made an agreement with his father, the plaintiff, whereby he was buying his father's farm, and that he needed the sum of $1,000 to make the first payment on the same. It was also represented to defendant that the farm had twenty-two cows on it; that C. A. Saling was purchasing the farm and dairy equipment; that the milking season was ahead, and that within six months he could easily pay back the loan of $1,000. Relying on such representations, defendant loaned C. A. Saling the sum of $1,000. The answer further charges the plaintiff with fraud, collusion, and conspiracy, engaged in by himself and his son for the purpose of cheating and defrauding defendant out of the sum of $1,000, and that plaintiff received the $1,000 without furnishing any consideration therefor.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Talmage, Claussen & Mannix,* with oral arguments by *Mr. C. W. Talmage* and *Mr. Joseph Mannix.*

For respondent there was a brief with oral arguments by *Mr. Geo. P. Winslow* and *Mr. H. T. Botts.*

BEAN, J.—1. It appears that C. A. Saling made a contract with his father to purchase the farm for $17,000 and borrowed $1,000 from the defendant bank to make the first payment. A deed was executed by W. A. Saling and wife to C. A. Saling on March 9, 1918, and recorded March 18, 1918. The plan was for C. A. Saling to obtain a federal farm loan, and pay his father $4,000 more and execute a second mortgage for the balance. Notes and a mortgage were

executed by C. A. Saling to W. A. Saling, but the mortgage was not recorded. W. A. Saling placed the documents in the defendant bank. An application for such a loan of $8,000 was made by C. A. Saling, but was approved for only about $4,000. No loan was obtained. About July 16, 1918, C. A. Saling seems to have abandoned the deal and deeded the property back to his father, and so informed the bank. When the negotiations were pending between plaintiff and his son, the senior Saling inquired of the bank if his son had any money there. This was after C. A. Saling had made arrangements with the bank for the loan of $1,000, but the transaction was not then completed. The officer of the bank declined to give the old gentleman any information in regard to the matter, and did not make any inquiry of W. A. Saling as to the kind of purchase the son was making. The bank did not know anything about the agreement between the father and son except what C. A. Saling told its officer. It appeared to trust the whole matter to the honesty and ability to pay of C. A. Saling. The officer of the bank was informed that the $1,000 loan was to make the first payment for the farm, and knew that C. A. Saling would owe the balance. C. A. Saling had obtained small loans of the bank before that time. The evidence does not sustain the charge of fraud against plaintiff, nor show that there was any collusion between plaintiff and C. A. Saling to defraud defendant. Mr. W. J. Riechers, cashier of the bank, testified as follows upon inquiry in regard to the loan:

"A. Charley Saling called at the bank several days before the loan was made, and he and I talked about the loan; that is, he wanted to know if he could get the money. Do you want me to state in full our conversation?

"Q. Yes, sir; state your conversation at that time.

"A. I asked him what he was—I don't believe I asked him either. I think he told me that he was going to buy his father's farm, and that his father was going to or was giving him all kinds of time and easy terms, and he wanted to borrow one thousand dollars to pay down to his father; and he at that time felt in six months he could pay most of it back. He said that he had twenty-two cows to milk, and that the producing season was right ahead of him, and that in six months he could pay most of that loan; and I told him if he could not pay all of it in six months that if he paid the most of. it that we would renew the balance at the end of six months."

It does not appear that the plaintiff made any statement to the bank to encourage the making of the loan, or was responsible in any way therefor. The other questions in the case were disposed of by the former opinion.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.